1

2

3

4          **UNITED STATES DISTRICT COURT**

5              **DISTRICT OF NEVADA**

6

7    MARIA GARCIA a Special Administrator to the   )
     Estate of GENESIS ACOSTA-GARCIA and as        )    2:07-CV-01507-RCJ-PAL
8    Guardian ad Litem to SANDRA ACOSTA-           )
     GARCIA; SANDRA ACOSTA-GARCIA, a               )
9    minor; GENESIS ACOSTA-GARCIA, a minor,        )    **ORDER**
     deceased                                      )
10                                                 )
                 *Plaintiff*s,                     )
11                                                 )
12           vs.                                   )
                                                   )
13   CLARK COUNTY; CLARK COUNTY                    )
     DEPARTMENT OF FAMILY SERVICES;                )
14   JOHN DOES I through XI, inclusive; ROE        )
     CORPORATIONS I and X, inclusive,              )
15                                                 )
                 *Defendants*.                     )
16   _____     )

17                    **I.  INTRODUCTION**

18          Before the Court is Defendant's Motion for Summary Judgment pursuant to Federal Rule

19   of Civil Procedure 56(c).  (#59).  Plaintiff has brought an action against Clark County, Clark County

20   Department of Family Services, Rick and Victoria Horner, and unnamed Doe Defendants for

21   negligent death of a infant Genesis Acosta-Garcia.  Defendant Clark County moves for summary

22   judgment on all counts.  Defendants Rick and Victoria Horner filed a Joinder to Clark County's

23   Motion (#61), as well as a Motion to Re-Open Discovery and Continue Trial (#64).

24          The Court has considered Defendant's Motion and the pleadings on file on behalf of all

25   parties.  IT IS HEREBY ORDERED that Defendant Clark County's Motion for Summary Judgment

1  (#59) is GRANTED as to all parties.  Defendants Rick and Victoria Horner's Motion to Re-Open

2  Discovery and Continue Trial is HEREBY DENIED as moot. (#64)

3                                    **II.  FACTS**

4          Plaintiff Maria Garcia is the Special Administrator of the Estate of Plaintiff Genesis Acosta-

5  Garcia, her deceased granddaughter.  Maria Garcia is also the Guardian ad Litum of Plaintiff Sandra

6  Acosta-Garcia, her daughter and the mother of the deceased child.  Thus the claims for all Plaintiffs

7  are brought by Plaintiff Maria Garcia.  Plaintiffs' Amended Complaint alleges violations of civil

8  rights under § 1983 against Doe Defendants, additional § 1983 claims against Clark County

9  Department of Family Services ("DFS") and Doe Defendants, additional § 1983 claims against Clark

10 County and DFS for failure to train, negligence on the part of Doe Defendants, Clark County, and

11 DFS, and negligence on the part of Rick and Victoria Horner ("Horners").  (Amended Complaint

12 ¶¶ 29–68, #45).

13         Plaintiff Sandra Acosta-Garcia was impregnated at the age of 11 by her mother's boyfriend

14 at the time.  Plaintiff Genesis Acosta-Garcia was born almost three months premature and was

15 diagnosed with respiratory distress, hyperbilirubinemia and clinical sepsis, requiring her to stay in

16 the hospital for approximately 50 days after being born.  The baby was placed into protective

17 custody after a hearing was conducted on September 28, 2005.  Neither the child's mother or

18 grandmother was present and were not represented by counsel.  The judge did set a plea hearing,

19 following a psychological assessment of both Plaintiffs Maria Garcia and Sandra Acosta-Garcia.

20 Plaintiffs were also provided with an attorney.  On November 9, 2005, the final decision was made

21 to keep Genesis in protective custody.

22         While these proceedings were ongoing, Genesis was released from the hospital on October

23 20, 2005, into the Child Haven's newborn and medically fragile cottage where she stayed for two

24 weeks.  She was seen every day by two Clark County nurses and was then placed into the home of

25 licensed Shelter Care foster parents, Defendants Rick and Victoria Horner. The Horners cared for

Page 2 of  17

Genesis for 20 days, during which Clark County caseworker Roshanda Tillman supervised their care for the baby.   The Horners also took Genesis to the shelter for visits with her mother and grandmother on October 30th, and November 2nd, 6th, 9th, and 13th.  Plaintiffs allege that they noticed a detrimental change in the baby's health during one of those visits.  The Horners allege that this was on the November 13th visit, as Defendant Victoria Horner also noted that Genesis appeared as though she might be coming down with a cold.

On November 14, 2005, Victoria Horner took the baby to a medical appointment with Nevada Health Centers, a medical services provider to foster children, where Horner told the nurse that Genesis was coughing, not acting herself, and not eating well.  She was sent home, told that it was just a cold.  Horner still did not feel that everything was okay and scheduled an appointment with her own pediatrician for Wednesday, Novemebr 15, 2005.

Horner put Genesis in bed around 2:00 a.m., at which point she noticed no changes in her condition for the worse.  However, when the Horners got up at 6:30 a.m. on Wednesday, November 15, 2005, the baby was not making any usual noises, was pale, and staring at nothing.  Noticing that her breathing was shallow and she was unsresponsive, the Horners called 911.   Genesis was admitted to the hospital where she tested positive for and was diagnosed with Respirotory Syncytial Virus ("RSV").  She died on the morning of November 19, 2005 from RSV and multi-system organ failure.

Plaintiffs brought their present claim based on what they characterize as the preventable death of Plaintiff Genesis Acosta-Garcia.   Plaintiffs claims against Clark County DFS were previously dismissed by this Court without prejudice, due to the determination that DFS cannot not be sued as a political subdivision of Clark County.  (#35).

Defendant Clark County now brings this present motion alleging that Defendant is entitled to summary judgment as a matter of law, as to all claims against Clark County.  The Horners join

the motion for summary judgment, requesting the Court find that they are entitled to prevail on the negligence claim against them, as a matter of law.

### III.  LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazari*, 84 F.3d 1194, 1197 (9th Cir. 1996).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof.  *Id.*  As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes which are irrelevant or unnecessary will not be considered. *Id.*  Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole.  *Id.*

### IV.  ANALYSIS

**A.    Plaintiffs Request for Additional Depositions Under Rule 56(f)**

As a preliminary matter, in their Response, Plaintiffs request that the Court allow them to

take additional depositions under Rule 56(f), alleging that the identity and information they needed

just came to light, thereby necessitating the additional discovery.  Rule 56(f) states:

> When Affidavits Are Unavailable. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

Fed. R. Civ. Pro. 56(f).  Specifically, Plaintiffs request to depose Vicki Shaver, Laura Brooks, and

Tandra Parks, employees of Clark County, and Carol Vieleher, the physicians assistant that saw

Genesis, and the Horners.  With the exception of the Horners, these are the same parties with which

Plaintiffs are attempting to replace their Doe Defendants.  Plaintiffs claim that they only just recently

obtained the identities of these proposed parties.  However, Defendant presents evidence that shows

that this is not true.  Defendant listed Vicki Shaver on its witness list and its Initial Disclosure in

November 2008.  (#68 Ex. KK).  Plaintiffs were provided with the names of the other parties in

Defendant's First Supplemental Disclosure date March 23, 2009. (#68 Ex. LL).

Further, Defendant points out again that Plaintiffs claims against medical providers are

barred by Nevada's statute of limitations.  Nevada Revised Statute 41A.097 provides:

> 2.   Except as otherwise provided in subsection 3, an action for injury or death against a provider of health care may not be commenced more than 3 years after the date of injury or 1 year after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first, for:
>
> > (a)   Injury to or the wrongful death of a person occurring on or after October 1, 2002, based upon alleged professional negligence of the provider of health care;
>
> . . . .

1

> > (c)   Injury to or the wrongful death of a person occurring on or after October 1, 2002, from error or omission in practice by the provider of health care.

2

3   Nev. Rev. 41A.97.  Defendant raised this issue in their Opposition to Plaintiff's Motion for an

4   Extension of Discovery as well.  (#40 at pg. 3).  Accordingly, allowing Plaintiffs to depose the

5   medical providers would be futile as their claims are time-barred.

6   Plaintiffs have failed to show reasonable grounds for needing additional depositions, so the

7   Court should deny their request pursuant to Rule 56(f)(1).  Plaintiffs had the opportunity and motive

8   to depose the requested parties earlier in this litigation, yet chose to wait until after discovery had

9   closed and the suit is nearing trial to attempt to obtain the factual evidence that would purportedly

10  support their case.  In fact, Plaintiffs only deposed one person during the time open for discovery.

11  Further, it appears that in regards to the medical providers, such attempts would be futile as their

12  claims are barred by the statute of limitations.

13  **B.     Plaintiffs' § 1983 Claim Against Doe Defendants**

14  Plaintiffs' first claim for relief alleges violations under § 1983 against Doe Defendants for

15  violations of their "constitutional right to a continuing familiar association." (Amended Complaint

16  ¶ 30, #45).  They allege that the Doe Defendants improperly investigated the Horners, improperly

17  supervised the Horners, and failed to reunify Plaintiffs. While they do allege that the Horners failed

18  to supervise Genesis properly, the claim is not asserted against the Horners only naming the Doe

19  Defendants as to this cause of action.

20  Defendant first raises Plaintiffs' failure to name actual persons in place of the Doe

21  Defendants.  Plaintiffs initial Complaint was filed on November 13, 2007, and their Amended

22  Complaint filed April 7, 2009, both without naming the specific parties against whom their claims

23  were made.  Defendant relies on Federal Rule of Procedure 4(m), which requires that a defendant

24  must be served with the summons and complaint within 120 days of the complaint.  Courts have

25  interpreted this as requiring that the Plaintiff name Doe defendants and serve them within those 120

1   days in order to be in compliance with the rule.  *See, e.g.*, *Aviles v. Village of Bedford Park*, 160

2   F.RD. 565, 567 (N.D. Ill. 1995); *Johnson v. Wigger*, 2009 WL 2424186 at *5 (N.D.N.Y. 2009).  A

3   court recently held that where the plaintiff failed to make a motion to amend their complaint to

4   replace a Doe defendant with a named defendant by the amended deadline pleadings, the plaintiff

5   was barred from doing so later, and their claims could not be brought to trial against Doe defendants.

6   *Maestrini v. City and County of San Francisco*, 2009 WL 814510 at *11–12 (N.D. Cal. 2009).

7   Defendant urges the Court to find this deficiency sufficient to dismiss Plaintiffs' claim.

8            Plaintiffs argue that Defendant did not provide the information during discovery by which

9   they could identify the Doe Defendants until recently.  Accordingly, they request leave to replace

10  the Doe Defendants with the following proposed defendants: Roshanda Tillman, the shelter

11  coordinator supervising the Horners; Susan Rothchild, the director of the shelter; Vicki Shaver,

12  whose involvement is not specified by Plaintiffs; L. Brooks, allegedly related to the claims against

13  the nurses; Parker, a nurse whose first name is not known or specified; and Carol Vielehr, a

14  physician assistant.  Plaintiffs argue that adding these Defendants, even though only trial is

15  scheduled to start in eight weeks, will not prejudice the existing defendants as the Horners were

16  recently added to the suit.  This argument is moot, however, as the Court is granting summary

17  judgment regarding the claims for negligence against the Horners.

18           Plaintiffs cite *Gillespie v. Civiletti*, 629 F.2d 637, 643 (9th Cir. 1980), to support their request

19  to amend.  The *Gillespie* court noted that the use of Doe defendants was not favored, however,

20  "where the identity of alleged defendants will not be known prior to the filing of a complaint . . .

21  [t]he plaintiff should be given an opportunity through discovery to identify the unknown defendants,

22  unless it is clear that discovery would not uncover the identities, or that the complaint would be

23  dismissed on other grounds."  *Id.*  In that case, the plaintiff had submitted interrogatories requesting

24  the identification of unnamed parties, but the district court improperly dismissed the claims without

25  requiring the defendants to answer the interrogatories.  *Id.*

1    In the present case, however, Defendant points out, as noted above, that Defendants provided

2    the names and documents to Plaintiffs earlier in the case, yet Plaintiffs failed to cure their pleadings.

3    Further, if this is treated as a request for leave to amend under Rule 15(a), the factors tend towards

4    denying Plaintiffs request. *See* Fed. R. Civ. Pro. 15(a); *DCD Programs Ltd. v. Light on*, 883 F.2d

5    183, 186 (9th Cir. 1987). Defendants would be prejudiced by forcing them to engage in additional

6    costs attendant to further discovery, Plaintiffs delay is untimely as they could have amended their

7    complaint previously to name these parties, and regardless, the amendment would be futile.

8    Considering that Plaintiffs were provided with the names and identities of each party they seek to

9    add more thane 120 days ago, Plaintiffs' request to supplement their Doe Defendants should be

10   denied and the cause of action dismissed based on the failure to name a party against whom the

11   action is being brought.

12   Defendant further points to the alleged violations of Nevada law in regards to this cause of

13   action as grounds for summary judgment. As Defendant correctly identifies, § 1983 only protects

14   federal rights, privileges, or immunities. *Yabarra v. Bastian*, 647 F.2 891, 892 (9th Cir. 1981).

15   Therefore, Plaintiffs assertions under Nevada law are inappropriate for a § 1983 claim. However,

16   these statutes are not the only basis for their claim under § 1983. The claim is essentially a due

17   process claim based on a liberty interest in their familial relationship with their daughter and

18   granddaughter. "It is well established that a parent has a fundamental liberty interest in the

19   companionship and society of his or her child and that the state's interference with that liberty

20   interest without due process of law is remediable under 42 U.S.C. § 1983." *Toguchi v. Chung*, 391

21   F.3d 1051, 1060 (9th Cir. 2004) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir.

22   2001)). Accordingly, this would be an insufficient basis to grant summary judgment.

23   Regardless, Plaintiffs failure to name parties as to their first cause of action is sufficient to

24   grant summary judgment in favor of Defendant.

25

1          **B.      Plaintiffs' § 1983 Claim Against DFS and Doe Defendants**

2          Plaintiffs also bring a § 1983 claim against DFS and additional Doe Defendants for failure

3    to implement policies that adequately governed the selection and supervision of foster children.  This

4    Court already ruled that DFS is not a suable entity as a political subdivision within Clark County,

5    pursuant to Nevada Revised Statute 41.031.  (#35).  Plaintiffs, however, still include claims against

6    DFS separate from the claims against Clark County.  They contend that Defendant is attempting to

7    impose a heightened pleading standard and that the Court should be compelled to accept their

8    pleadings under the liberal system of notice pleading.  However, this liberality in regards to

9    pleadings does not mean that parties may ignore prior rulings by the Court and name parties that

10   may not be sued.  Accordingly, based on this failure and the discussion noted in the previous section

11   as to the Doe Defendants, Defendant's motion should be granted in regards to Plaintiffs' second

12   cause of action.  Further, the following discussion shows that Defendant is entitled to summary

13   judgment regardless of whether they named Clark County correctly.

14         **C.      Plaintiffs' § 1983 Claims Against Clark County**

15                **1.      Requirements to Establish a § 1983 Claim**

16         Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of [law], subjects, or

17   causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

18   privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

19   in an action at law . . . or other proper proceeding for redress."  Consequently, to establish liability

20   under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws

21   of the United States, and must show that the alleged deprivation was committed by a person acting

22   under color of state law.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

23         There seem to be two bases for Plaintiffs claims: that Defendants failed to protect Genesis

24   while she was in the custody of the County and the foster parents, and that Defendants violated the

25   Plaintiffs right of companionship with Genesis by allowing her to die.

In *DeShaney v. Winnebago County Department of Social Services* the Supreme Court considered whether or not there is substantive due process right of protection. In that case, the Court was faced with the situation where the state left a child with his abusive father, after reports of abuse, and the child was subsequently severely beaten, resulting in severe brain damage. *DeShaney v. Winnebago County Dept. of Soc. Servs*, 489 U.S. 189, 195–96, 109 S.Ct. 998 (1989). The plaintiffs in that case argued first that there was a categorical duty to protect the child and second, that a "special relationship" was created by the state's knowledge of the abuse that the child was suffering, giving rise to an affirmative duty enforceable through the Due Process Clause. *Id* at 195–97. The Court rejected both of these arguments. The Court first stated that the Fifth and Fourteenth Amendment were "intended to prevent government 'from abusing its power, or employing it as an instrument of oppression." *Id.* at 196. They further noted that "our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* They concluded that the state has no affirmative duty to protect an individual from violence by another private actor.

As to the second basis, the Court similarly found that there was no enforceable duty. The plaintiff in that case raised the argument that a special relationship was created by the state by their investigation of the abuse of the child. *Id.* at 197. The Court recognized that there are circumstances where a special relationship is created, such as a prisoner in custody of the state or involuntarily committed mental patients. *Id.* at 198–99 (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976); *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452 (1982)). The Court identified that what separated these circumstances and the case before them was that the persons in those cases were in custody against their will, thereby imposing on the state a duty to "provide for his basic human needs — *e.g.*, food, clothing, shelter, medical care, and safety . . . ." *Id.* at 200. "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf — through

1  incarceration, institutionalization, or other similar restraint of personal liberty — which is the

2  'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to

3  protect his liberty interests against harms inflicted by other means." *Id.* The Court, however, seemed

4  to leave room for such a claim while a child was in state custody.

5       Accordingly, various courts, including this Court, have held that children involuntarily

6  placed in custody are entitled to certain affirmative duties imposed on the state due to their special

7  relationship. "Courts have held that children 'who have been involuntarily placed in the custody of

8  [the state] may state a claim for violation of their substantive due process rights based upon their

9  right to freedom from harm under the fourteenth amendment of the United States Constitution.'"

10  *Clark K. v. Guinn*, 2007 WL 1435428 at *15 (D. Nev. 2007) (quoting *Baby Neal v. Casey*, 821

11  F.Supp. 320, 335 (E.D. Pa.1993). This right to be free from harm stems from the special relationship

12  exception, discussed in *DeShaney*. *See Nicini v. Morra*, 212 F.3d 798, 807–08 (3d Cir. 2000).

13  "[W]hen the state places a child in state-regulated foster care, the state has entered into a special

14  relationship with that child which imposes upon it certain affirmative duties. The failure to perform

15  such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983."

16  *Id.* at 808; *see also K.H. v. Morgan*, 914 F.2d 846, 849 (7th Cir. 1990) ("Once the state assumes

17  custody of a person, it owes him a rudimentary duty of safekeeping no matter how perilous his

18  circumstances when he was free."); *Hudson v. City of Salem*, 2009 WL 1227770 at *32 (D. Or.

19  2009) (concluding "the constitutional right to personal safety and security applies to children placed

20  in state-regulated foster care"). While the Ninth Circuit has not specifically addressed this exception

21  regarding foster children, as this characterization appears to be consistent with the Supreme Court's

22  decision, it is appropriate to proceed to determining the sufficiency of a violation of those rights.

23       The next step is to determine what conduct by the state actors is sufficient to amount to a

24  violation of a plaintiff's constitutional right. "The relevant question on the facts here is whether the

25  shocks the conscience standard is met by showing that [the defendant] acted with deliberate

1    indifference . . . ." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  Deliberate indifference

2    by state actors is a subset of the conduct that shocks the conscious, which is the touchstone for

3    determining whether or not the conduct is wrongful under § 1983.  In fact, "[t]he Supreme Court has

4    made it clear, as the district court correctly recognized, that only official conduct that 'shocks the

5    conscience' is cognizable as a due process violation."  *Id.* (quoting *County of Sacramento v. Lewis*,

6    523 U.S. 833, 846, 118 S.Ct. 1708 (1998)).  However, as noted by the district court in *Hudson*, the

7    "standard of culpability by which a court measures the effect the defendant's actions on its

8    conscience" is very contextual depending on the "setting in which the conduct occurs."  *Hudson*,

9    2009 WL 1227770 at *32–33.  Based on the amount of time for deliberation, the courts have held

10    that there are varying standards for deliberate indifference.  *Compare Porter*, 546 F.3d at 1138-39

11    (applying a "purpose to harm" standard where choices were made in the course of an emergency or

12    rapidly developing circumstances) *with Gibson v. County of Washoe*, Nev. 290 F.3d 1175, 1187 (9th

13    Cir. 2002) (applying deliberate indifference standard in the context of providing medical care to

14    pre-trial detainees).  Accordingly, in *Hudson*  the district court applied a deliberate indifference

15    determination in the context of placing a child in the foster care home, whereas the liability for

16    providing inadequate medical care was subject to a standard of knowing and disregarding an

17    excessive risk.  *Hudson*, 2009 WL 1227770 at *33 (borrowing this application from the context of

18    state imposed institutionalization, citing *Gibson*, 290 F.3d at 1187); *see also L.W. v. Grubbs*, 92 F.3d

19    894, 900 (9th Cir. 1996) ("the plaintiff must show that the state official participated in creating a

20    dangerous condition, and acted with deliberate indifference to the known or obvious danger in

21    subjecting the plaintiff to it.").  These standards are also similar to those employed regarding a

22    motion to dismiss in *Mix v. Jones-Johnson*, 2006 WL 1435428 at *3 (D. Nev. 2006), where the court

23    held that plaintiffs must show that defendants "knew of, and nevertheless disregarded, an excessive

24    risk to decedent's health and safety."

25

1    This analysis is sound.  This Court holds that Genesis was entitled to freedom from harm due

2    to the special relationship created by placing her in protective custody and her placement in the

3    foster care system.  Therefore, in order to show that this constitutional right was violated, Plaintiffs

4    are required to show that Defendants knew of and deliberately disregarded an excessive risk to

5    Genesis.  In order to succeed on their claim for violation of their right to familial companionship,

6    Plaintiffs must show that Defendants engaged in deliberate indifference in placing Genesis in the

7    foster care home and removing her from her mother.

8                    **2.       Clark County or DFS**

9    Plaintiffs claims in their third cause of action and their second cause of action (though, as

10   already noted, Plaintiffs improperly name DFS) are alleged against Clark County as a municipality.

11   A municipality is only liable under § 1983 where a municipal policy or custom is shown to have

12   caused the violation of a plaintiff's constitutional right.  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658,

13   690-91, 98 S.Ct. 2018 (1978).  This is because "Congress did not intend municipalities to be held

14   liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."

15   *Id.* at 690.  "The 'official policy' requirement was intended to distinguish acts of the municipality

16   from acts of employees of the municipality, and thereby make clear that municipal liability is limited

17   to action for which the municipality is actually responsible."  *Pembaur v. City of Cincinnati*, 475

18   U.S. 469, 479, 106 S.Ct. 1292 (1986).

19   After determining that a deliberate policy was in place by a municipality, a plaintiff must still

20   show "a direct causal link between a municipal policy or custom and the alleged constitutional

21   deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989) (citing *Monell*,

22   436 U.S. at 694-95, 98 S.Ct. 2018).  Conduct by actors without policymaking authority does not

23   establish municipal policy.  The policy implicated by a plaintiff's allegation must amount to a

24   deliberate indifference to the plaintiff's constitutional right and that the policy is "moving force

25   behind the constitutional violations."  *Anderson v. Weaver*, 451 F.3d 1063, 1070 (9th Cir. 2006).

1

2          Plaintiffs' allegations fail in regards to their § 1983 claims in their third cause of action as

3    the undisputed evidence shows that Clark County is entitled to judgment as a matter of law.

4    Plaintiffs specifically allege that Clark County failed to train their employees in: (1) investigating

5    and licensing foster parents, (2) selection of foster parents for particular foster children, (3) re-

6    licensing of foster parents, (4) supervision of foster children in foster homes, (5) protection of foster

7    children from abusive foster parent, (6) reporting of child abuse to Child Protective Services, and

8    (7) preparation of accurate reports.  Defendant first states that it is not responsible for providing

9    training as this is contractually the obligation of the State of Nevada.  (#59 Ex. FF).

10         Plaintiffs do not contest the fact that Defendant is not responsible to train, but argue that

11   Defendant failed to adequately guard against injuries.  The evidence cited by Plaintiffs is mostly in

12   regards to the total amount of child deaths while in Clark County custody.  Looking at the Report

13   of Plaintiffs' expert witness, there are questions raised as to the present case.  For instance, the report

14   raises questions of fact such as the history of the Horners as foster parents and their capability of

15   dealing with medically fragile children, whether or not a caseworker visited the Horner's home, did

16   they have too many foster children, and was a proper review of the death conducted.  The rest of the

17   report primarily deals with general problems with the child welfare system.  (#62 Ex. 2).

18         However, Plaintiffs may not rest on the allegations of their claim.  *See Anderson v. Liberty*

19   *Lobby, Inc*., 477 U.S. 242, 248 (1986) ("a party opposing a properly supported motion for summary

20   judgment  may not rest upon the mere allegations or denials of his pleading, but ... must set forth

21   specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted)).

22   Defendant has presented evidence of facts dealing with the selection and supervision of Genesis

23   while in foster care.  Defendants cite to the series of administrative rules that govern the selection,

24   inspection, licensing, and various regulatory policies used by Clark County in its selection and

25   supervision.  (#59 at 21–23).  Further, they present the administrative code which governs the

1   supervision of foster care children and the reports filed by the Care Giver Services caseworker,

2   which included multiple visits to the foster home.  Plaintiffs fail to present evidence which

3   contradicts this, or to even contest the evidence presented at all.  As such, the undisputed evidence

4   before the Court is woefully insufficient to support the finding that a reasonable person could

5   determine that the County had policies which constituted the moving force behind an alleged

6   violation of Genesis's right to be free from harm.  On the contrary, Defendants have presented

7   evidence that shows that the County acted in a reasonable manner in placing Genesis with the

8   Horners and the subsequent supervision.  Plaintiffs do not present any disputed evidence that

9   demonstrates the existence of a material fact.  Accordingly, summary judgment is appropriate as

10  there are no genuine issues of material fact that have been raised by Plaintiffs as regards to the

11  second and third causes of action.

12              **2.    Doe Defendants**

13          Were the Court to allow Plaintiffs to replace the Doe Defendants, Defendant would still be

14  entitled to summary judgment.  Plaintiffs allege in their first cause of action that the Doe Defendants

15  failed to provide medical care, failed to supervise, and improperly licensed the foster parents.

16  Plaintiffs present no evidence which supports these bald allegations other than questions posed by

17  their expert witness and the testimony of Plaintiff Maria Garcia.  Even taken as true, Garcia's

18  testimony fails to establish material issues of fact that the Doe Defendants' failed to act

19  appropriately.  Defendant presents various evidence showing the medical care provided to Genesis,

20  none of which is disputed by Plaintiffs.  Defendants also provide the guidelines and procedures for

21  licensing and supervising the foster homes.  However, Plaintiffs provide no specific deficiencies in

22  the supervision of licensing of the Horners and do not provide any evidence supporting the

23  inadequacy of Defendant's actions.  Their only proposed evidence is the testimony of their expert

24  witness that there was nothing that could be done for Genesis by the time she was admitted to the

25  hospital.  Plaintiffs make no specific claims as to the deficiency of Defendant's handling of

1   Genesis's condition or reaction to her symptoms.  The mere allegations made by Plaintiffs are

2   insufficient to overcome the evidence offered by Defendants.  Accordingly, summary judgment is

3   appropriate as there are no genuine issues of material fact that have been raised by Plaintiffs.

4          **D.      Plaintiffs' Claim of Negligence**

5          Defendant's motion should be granted as to the claim of negligence, as Plaintiffs have failed

6   to raise any genuine issues of material fact in dispute that support their claim.  Plaintiffs argue that

7   Defendant is not entitled to immunity and that they have presented evidence that there are issues of

8   material fact as to whether or not Defendant was negligent.

9          Plaintiffs allegations are conclusory and do not establish the existence of genuine issues of

10  material fact.  In order to prevail in a negligence claim, the plaintiff must show that (1) the defendant

11  owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal

12  cause of the plaintiff's injury; and (4) the plaintiff suffered damages.  *Doud v. Las Vegas Hilton*

13  *Corp.*, 109 Nev. 1096, 1100 (Nev. 1993).  Plaintiffs provide no other support for their claim that

14  Defendant breached its duty and caused the death of Genesis other than the bare allegations that they

15  failed to monitor her appropriately.  Rather, Plaintiff claims that reasonableness in Defendant's

16  actions is necessarily a matter for the jury.  However, the Ninth Circuit has "squarely rejected the

17  contention that reasonableness is always a question of fact which precludes summary judgment.

18  Rather, reasonableness becomes a question of law and loses its triable character if the undisputed

19  facts leave no room for a reasonable difference of opinion."  *Evanston Ins. Co. v. OEA, Inc.*, 566

20  F.3d 915, 920 (9th Cir. 2009) (internal citation omitted) (quoting *In re Software Toolworks Inc.*, 50

21  F.3d 615, 622 (9th Cir.1994)).  Defendant's factual assertions are not disputed.  Defendant fulfilled

22  its duty to supervise and Plaintiffs have not presented evidence that would even allow a jury to

23  reasonably conclude that they were negligent.  As Plaintiffs have failed to support their allegations,

24  and Defendant has presented evidence of fulfillment of their duty to Plaintiffs, the claim for

25  negligence should be resolved pursuant to summary judgment for Defendant Clark County.

1

**E.      Plaintiffs' Claim of Negligence Against the Horners**

2          Likewise, the claim of negligence is also unsupported against the Horners.  On the contrary,

3   the Horners and Clark County have presented evidence that not only did the Horners respond

4   reasonably to the situation, they took affirmative action to help Genesis, even when medical

5   professionals told her that the baby was okay.  Plaintiffs have presented nothing other than bare

6   allegations that the Horners could have done anything differently that would have prevented the

7   death of Genesis.  As a matter of law, the Horners' activities were reasonable, and Plaintiffs have

8   failed to supply any disputed facts which would prevent the Court from determining that the Horners

9   are not entitled to summary judgment as a matter of law.

10         As it is appropriate to grant summary judgment in favor of the Horners, it is unnecessary to

11   consider the merits of their Motion to Re-Open Discovery and Continue Trial. (#64).

12                                   **V.  CONCLUSION**

13         The Court has considered the arguments and the pleadings on file on behalf of all parties.

14   IT IS HEREBY ORDERED that Defendant Clark County's Motion for Summary Judgment (#59)

15   is GRANTED as to all parties.  Defendants Rick and Victoria Horner's Motion to Re-Open

16   Discovery and Continue Trial is HEREBY DENIED as moot. (#64)

17         DATED:          November 10, 2009

18

19                                                     _____

20                                                     ROBERT C. JONES
                                                       UNITED STATES DISTRICT JUDGE

21

22

23

24

25